UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BARUCH TRATNER                          :
Yeddit 70                               :
Elazar, Israel                          :
                                        :
and                                     :
                                        :
JUSITH TRATNER                          :
3/11 Alma Road                          :
Parkdale, Vic, Australia 3195           :
                                        :
and                                     :
                                        :
DRORA WIZNER                            :     Civil Action No.
Bnei Netzarim                           :
D.N. Hanegev, Israel 85484              :
                                        :
and                                     :
                                        :
RIVKA SELZER                            :
P.O. Box 105                            :
Elazar, Israel                          :
                                        :
and                                     :
                                        :
BELKA GEZ                               :
Kotlav 2                                :
Bet Ell, Israel 906310                  :
                                        :
and                                     :
                                        :
NATHAN PAM                              :
4507 Santa Rita Road                    :
Richmond, CA 94803                      :
                                        :
and                                     :
                                        :
RAZIEL PAM                              :
17161 Orozco Street                     :
Granada Hills, CA 91344                 :
                                        :
and                                     :
                                        :
NEEMAH PAM FISHER                       :

1

Derech Ramon 2, Apt. 8                                    :
Mitzpeh Ramon, 608000                                    :
Israel                                                   :
                                                         :
                                      Plaintiffs,        :
                                                         :
               v.                                        :
                                                         :
THE ISLAMIC REPUBLIC OF IRAN                             :
Ministry of Foreign Affairs                              :
Khomeini Avenue                                          :
United Nations Street                                    :
Tehran, Iran,                                            :
                                                         :
and                                                      :
                                                         :
SYRIAN ARAB REPUBLIC                                     :
Damascus, SYRIA                                          :
                                                         :
                                      Defendants.    :
……………………………………………………:

## **COMPLAINT**

1.     Plaintiffs Baruch Tratner, Judith Tratner, Drora Wizner, Rivka Selzer, and Belka Gez (collectively, the "Tratner Plaintiffs"); and Nathan Pam, Raziel Pam, and Neemah Pam Fisher (collectively, the "Pam Plaintiffs"), by counsel, respectfully bring this action against Defendants The Islamic Republic of Iran ("Iran"), and The Syrian Arab Republic ("Syria"), jointly and severally. This matter is related to, *inter alia, Baxter, et al.* v. *Islamic Republic of Iran, et al.*, Civil Action No. 11-cv-02133 (RCL) (D.D.C) and *Baxter, et al.* v. *Syrian Arab Republic, et al.*, Civil Action No. 18-01078 (RCL) (D.D.C) in that (a) it involves Iranian and Syrian sponsorship of the same terrorist organization, Islamic Resistance Movement ("HAMAS"), and same terrorist attacks which resulted in the death and injuries of American citizens, which include the family members of the Tratner Plaintiffs and Pam Plaintiffs, and (b) the family members of the Tratner Plaintiffs and Pam Plaintiffs are plaintiffs in those matters.

2

## JURISDICTION, VENUE, AND CHOICE OF LAW

2.      This Court exercises subject matter jurisdiction in accordance with the provisions of 28 U.S.C. §§ 1330(a), 1331, 1332(a)(2), and 1605A.

3.      Defendant Islamic Republic of Iran was  designated as a State Sponsor of Terror by the United States Department of State in 1984, and continues to be listed to the present day.

4.      Defendant Syrian Arab Republic was designated as a State Sponsor of Terror by the United States Department of State in 1979, and continues to be listed to the present day.

5.      Defendants Iran and Syria are subject to suit in the courts of the United States pursuant to 28 U.S.C. § 1605A.

6.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(f)(4), which provides, in pertinent part, that a civil action against a foreign State may be brought in the United States District Court for the District of Columbia.

7.      Actions for wrongful death, personal injury and related torts perpetrated by foreign state sponsors of terrorism through their officials, employees, and agents within the meaning of 28 U.S.C. § 1605A(c) are unique causes of actions arising out of federal counterterrorism statute(s) and are controlled by applicable federal law.

## THE PARTIES

**A.  The Plaintiffs**

8.      This action is brought by the Plaintiffs, by and through their counsel, in the individual capacity of each Plaintiff and/or on behalf of all those legally entitled to assert a claim under the FSIA. In support of their Complaint, Plaintiffs allege as follows:

### The Tratner Family

9.    On September 24, 2004, Tiferet Tratner, a 24-year-old American citizen who worked with the elderly and with people with disabilities, was killed in her home as she sat on the couch in Neve Dekalim, Israel by a terrorist mortar attack launched from or near the Gaza Strip. This murder took place the day before Yom Kippur.  The Estate of Tiferet Tratner is a plaintiff in the actions *Baxter, et al. v. Islamic Republic of Iran, et al.,* Civil Action No. 11-cv-02133 (RCL) (D.D.C) and *Baxter, et al. v. Syrian Arab Republic, et al.,* Civil Action No. 18-01078 (RCL) (D.D.C).

10.    HAMAS claimed responsibility for the terror attack and was in fact responsible.

11.    Plaintiff Baruch Tratner is a citizen of the United States and a resident of the State of Israel.  He is the brother of Tiferet Tratner.  As a result of the attack upon his sister, Tiferet, Baruch Tratner has suffered severe mental anguish and extreme emotional pain and suffering.

12.    Plaintiff Judith Tratner is a citizen of the United States and a resident of the State of Israel.  She is the sister of Tiferet Tratner.  As a result of the attack upon her sister, Tiferet, Judith Tratner has suffered severe mental anguish and extreme emotional pain and suffering.

13.    Plaintiff Drora Wizner is a citizen of the United States and a resident of the State of Israel.  She is the sister of Tiferet Tratner.  As a result of the attack upon her sister, Tiferet, Drora Wizner has suffered severe mental anguish and extreme emotional pain and suffering.

14.    Plaintiff Rivka Selzer is a citizen of the United States and a resident of the State of Israel.  She is the sister of Tiferet Tratner.  As a result of the attack upon her sister, Tiferet, Rivka Selzer has suffered severe mental anguish and extreme emotional pain and suffering.

15.    Plaintiff Belka Gez is a citizen of the United States and a resident of the State of Israel.  She is the sister of Tiferet Tratner.  As a result of the attack upon her sister, Tiferet, Belka Gez has suffered severe mental anguish and extreme emotional pain and suffering.

16.     Baruch Tratner, Judith Tratner, Drora Wizner, Rivka Selzer, and Belka Gez shall hereinafter be defined as "Family Member(s) of Tiferet Tratner".

## The Pam Family

17.     On June 11, 2003, 16-year-old Rivka Reena Pam was on Bus No. 14A in Jerusalem, Israel.  Around 5:30 p.m., an individual dressed as an ultra-orthodox Jew boarded Egged Bus No. 14A at the Mahane Yehuda market.  A short while later, as the bus drove down Jaffa Road, within Jerusalem, Israel, he detonated his bomb, wrecking the bus and killing sixteen passengers.  Over 100 people were wounded, including dozens of passersby.

18.     HAMAS claimed responsibility for the bombing.  The suicide bomber who acted for HAMAS to commit this brutal attack was Abed Al Mo'ti Mohammad Shabana.  He carried a huge bomb containing a great deal of metal fragments that caused massive injuries.

19.     This terror attack was within the scope of the scheme and conspiracy described below in which Arab Bank was a knowing and active participant.

20.     Rivka works with children and this teenager's life has changed dramatically as a result of her injuries in this terrorist incident.  She was hospitalized for a number of days in intensive care, suffered burns, lung damage, eye injury, scarring and severe hearing loss, which requires future medical and surgical care.  Her happy outgoing personality has been affected because of the severe emotional distress and hearing loss, pain, suffering, mental anguish, trauma and extreme emotional distress that she has experienced from this terrorist attack, all to her damage.

21.     Rivka Reena Pam is a plaintiff in the actions *Baxter, et al. v. Islamic Republic of Iran, et al.,* Civil Action No. 11-cv-02133 (RCL) (D.D.C) and *Baxter, et al. v. Syrian Arab Republic, et al.,* Civil Action No. 18-01078 (RCL) (D.D.C).

22.     Plaintiff Natan Pam is a citizen of the United States and resident of California. He is the brother of Rivka Reena Pam.  As a result of the attack upon his sister, Rivka, Nathan Pam has suffered severe mental anguish and extreme emotional pain and suffering.

23.      Plaintiff Raziel Pam is a citizen of the United States and resident of California. He is the brother of Rivka Reena Pam.  As a result of the attack upon his sister, Rivka, Raziel Pam has suffered severe mental anguish and extreme emotional pain and suffering.

24.      Plaintiff Neemah Pam Fisher is a citizen of the United States and a resident of the State of Israel.  She is the sister of Rivka Reena Pam.  As a result of the attack upon her sister, Rivka, Neemah Pam Fisher has suffered severe mental anguish and extreme emotional pain and suffering.

25.     Nathan Pam, Raziel Pam, and Neemah Pam Fisher shall hereinafter be defined as "Family Member(s) of Rivka Reena Pam".

## B.  THE DEFENDANTS

### The Islamic Republic of Iran

26.     Defendant The Islamic Republic of Iran ("Iran") is a foreign state that has been designated and continues to remain designated as a state sponsor of terrorism pursuant to § 60 of the Export Administration Act of 1979 (50 U.S.C. App. § 2405) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984.  Iran, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS.

27.     Defendant Islamic Republic of Iran is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979 (50 U.S.C. App. § 2405) and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since January 19, 1984.  Iran, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS, in aid and support of its violent

campaign against the State of Israel ("Israel"), a member-state of the United Nations, and close ally of the United States.

28.     Iran, through its actions, caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

29.     Defendant Iran is liable for the actions of HAMAS and its agents.

**The Syrian Arab Republic**

30.     Defendant Syrian Arab Republic ("Syria") is a foreign state that has been designated and continues to remain designated as a State Sponsor of Terrorism pursuant to § 60 of the Export Administration Act of 1979, 50 U.S.C. App. § 2405, and § 620(A) of the Foreign Assistance Act of 1961 (22 U.S.C. § 2371) since December 29, 1979.  Syria, at all times pertinent to this action, provided and continues to provide material support and resources to HAMAS, in aid and support of its violent campaign against Israel.

31.     Syria, through its actions caused the death and injuries described herein, within the meaning of 28 U.S.C. § 1605A, by providing HAMAS with funding, direction, material support, encouragement, safe haven and/or training for its terrorist activities.

32.     Defendant Syria is liable for the actions of HAMAS and its agents.

**IRAN'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS**

33.     Iran has used and continues to use terror as a means of attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools to commit the terror attacks.  This has been determined by the US Department of State, which listed Iran on its 1984 list of State Sponsors of Terror, a status that has

been continuously maintained since that time.  Numerous US District Court Judgments have been entered against Iran for supporting and sponsoring terror against Americans.

34.     The Islamic Republic of Iran is a republic in name only. In reality, it is a theocracy headed by a single cleric holding the title of Supreme Leader who has nearly complete control of the country's policies and actions. Externally it appears to be a democratic regime which conducts elections, but the truth is that the Supreme Leader is a dictator.

35.     The constitution gives the Supreme Leader the responsibility to set the general policies of Iran, including domestic and foreign policies.

36.     The Supreme Leader also is commander-in-chief of the armed forces, controls the intelligence and security operations, appoints leaders of the judiciary, state radio, and state television networks, and is supreme commander of the Islamic Revolutionary Guard Corps (IRGC).

37.     The Supreme Leader appoints half of the Council of Guardians, the body that oversees the Parliament, ensures laws are in compliance with Sharia Law, and determines which candidates are qualified to run for public office.

38.     The Supreme Leader, by and through his independent appointments, effectively controls what laws are passed and who is allowed to run for office.

39.     The first Supreme Leader, Ayatollah Ruhollah Khomeini, assumed power in 1979 after the overthrow of the government of the Shah of Iran. He instituted clerical rule and established the modern Iranian constitution, governed by Sharia law, and that establishes a Supreme Leader as the real head of the state.

40.     Khomeini ruled until his death on June 4, 1989.

41.     Seyyed Ali Khamenei was selected by the Assembly of Experts, an 86-cleric assembly, to be the second, and current, Supreme Leader in August 1989.

42.     Since his ascension to Supreme Leader, Khamenei has continued and expanded Khomeini's ideology of terrorism as an important tool of foreign policy.

43.     Iran supports such Foreign Terrorist Organizations as HAMAS, HIZBALLAH (also spelled HEZBOLLAH) and PALESTINIAN ISLAMIC JIHAD.  Iran is publicly committed to the destruction and annihilation of Israel, demonizes Israel at the United Nations and in the court of public opinion and supports international terror in pursuit of its political goals against both Israel and the United States of America.  Support for HAMAS from Iran territory or Iran government actors, on the scale required to facilitate, support, arm, embolden and encourage HAMAS, could not have been accomplished without the explicit authorization of the Iranian government and Iranian Military Intelligence through Supreme Leader Ali Khamenei.

44.     Iran has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States. A few of those attacks include, but are not limited to:

a.  The Ben Yehuda Street bombing on September 4, 1997, in which three HAMAS operatives entered a crowded pedestrian mall in Jerusalem and detonated their suicide bombs killing five people and injuring nearly 200, including the American citizen Yael Botvin. This Court found Iran liable for funding, aiding, and supporting the HAMAS terrorists in the matter of *Estate of Botvin v. Islamic Republic of Iran*, 873 F. Supp. 2d 232 (D.D.C. 2012).

b.  The Sbarro restaurant bombing on August 9, 2001, in which a HAMAS operative detonated a bomb that he carried in a guitar case, killing fifteen people including at least two American citizens, one of whom was Malki Roth. This Court found Iran liable for the material support and training they provided to the HAMAS terrorist in the matter of *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379 (D.D.C. 2015).

    c.   The April 30, 2003, suicide bombing at Mike's Place, a music club in Tel Aviv, Israel. A HAMAS suicide bomber detonated his explosives inside Mike's Place, a popular club next to the US Embassy to Israel and frequented by many tourists and US Embassy personnel.

45.    HAMAS is an international terrorist organization. It receives material support from Iran, Syria, and others. During the period relevant hereto, Defendant Iran provided HAMAS and its operatives with training bases, facilities, funding, and other material support for its terror activities. These training bases and facilities were located outside Tehran, Iran, in Dara Kazwin.

46.    HAMAS and its operatives utilized the training bases and facilities provided by Iran to train for the commission of acts of terrorism. This training included the use of firearms, explosives, and other weapons.

47.    HAMAS and its operatives also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

48.    Additionally, at all times relevant hereto, Iran provided HAMAS and its operatives with funding and training in terrorism activities, including training on the use of weapons and explosives.

49.    Upon information and belief, the training in terrorism activities was provided by and through Iran military and intelligence officials, and other agents, employees and officials of Defendant Iran.

50.    Upon information and belief, at all times relevant hereto, Defendant Iran also provided HAMAS and its leaders, officials, and operatives, with lodging, safe haven, and shelter permitting them to conduct their terrorist activities freely and unhindered.

51.     The duration, quantity, and quality Iran's material support, even if not designated for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS could not have carried out the lethal attack described in this complaint without Iran's support and sponsorship. Iran and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, yet continue to support HAMAS to this very day.

52.     Therefore, as a direct and proximate result of the provision of the material support to HAMAS by the Defendant Iran as described herein, hundreds of innocent civilians were killed and grievously injured by acts of terrorism committed by HAMAS.  Among the civilians murdered and wounded by HAMAS' terrorist attacks committed with the material support of the Islamic Republic of Iran was Tiferet Tratner and Rivka Reena Pam, whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages, in amounts as shall be proven at the trial of the within action.

## SYRIA'S SPONSORSHIP OF AND PROVISION OF MATERIAL SUPPORT AND RESOURCES TO HAMAS

53.     Syria has used and continues to use terror as a means of attempting to accomplish its foreign policy and uses terror organizations, such as HAMAS, Hezbollah and other terror organizations as its tools to commit the terror attacks.  This has been determined by the US Department of State, which listed Syria on its 1979 list of State Sponsors of Terror, a status that has been continuously maintained since that time.  Numerous US District Court Judgments have been entered against Syria for supporting and sponsoring terror against Americans.

54.     The Syrian Arab Republic is a republic in name only. In reality, it is a dictatorship and police state that strategically exhibits only the external forms of a democratic regime.

55.     Until a February 2012 referendum, its constitution vested one particular party – the Arab Socialist Ba'ath Party –with leadership functions in the State and society.

56.     Despite the constitutional referendum, the President still has the power to issue laws, and controls the legislative process.

57.     In 1966, Syrian Ba'athists conducted a coup d'état. The Ba'athists eliminated all political parties in opposition. Hafez Al-Assad was appointed Minister of Defense.

58.     In 1970, Hafez Al-Assad led another coup, in which the Ba'ath party was purged of internal opposition, its leaders were jailed, and Hafez Al-Assad installed as President of the police state.

59.     The Al-Assad family has controlled the Syrian regime without interruption for forty-seven (47) years, since approximately 1970.

60.     Hafez Al-Assad had a three-decade Presidency, lasting from 1970 to 2000, in which he was confirmed President in unopposed referenda five consecutive times.

61.     He was succeeded by his son Bashar Al-Assad in 2000. Bashar Al-Assad was confirmed as President, leader of the Ba'ath Party and leader of the Army, for a 7-year term, by an unopposed referendum held in 2001 in which he claimed 97.2% of the vote.

62.     He was re-appointed in another unopposed referendum in 2007, this time claiming 97.6% of the vote.

63.     In 2014, Bashar Al-Assad was reelected to a third 7-year term, claiming 88.7% of the vote with polling only allowed in government-held territory.

64.     Members of President Al-Assad's own minority sect, the Al-Awali clan, control most key positions in the Syrian military and Syrian intelligence and security services.

65.     The Ba'ath Party, controlled by Al-Assad, is in control of the Syrian military, intelligence and security services, the latter consuming a large share of Syria's economic resources.

66.     President Al-Assad and his senior aides in the Syrian military and Syrian intelligence and security services make most important decisions in Syrian political and economic life.

67.     There are more than a dozen security services in Syria, some overlapping in their domains, to make sure that the whole of Syrian territory is covered. These security services answer directly to President Bashar Al-Assad and his brother General Maher Al-Assad, commander of the Syrian Republican Guard.

68.     Syria is a dictatorship which is committed to the destruction of the State of Israel and which uses the providing of material support for acts of terror as a means of expressing its political opposition to Israel and the United States of America.

69.     Syria provides extensive material support for HAMAS as part of its network of terror supporting activities in opposition to Israel and the United States of America.

70.     Support for HAMAS from Syrian territory or by Syrian government actors, on the scale required to facilitate HAMAS, could not have been accomplished without the explicit authorization of the Syrian government and Syrian Military Intelligence through President Al-Assad. Syria's own Foreign Minister once publicly admitted, with reference to terrorist attacks carried out by the Abu Nidal Organization with Syrian material support and sponsorship, "Whoever knows my government must realize that such attacks could not be carried out without its awareness."

71.     U.S. Department of State Bulletin 87, published in 1987 [Feb. 1987:73]  states: "[a]vailable evidence indicates that Syria prefers to support groups whose activities are generally in line with Syrian objectives rather than to select targets or control operations itself. Damascus utilizes these groups to attack or intimidate enemies and opponents and to exert its influence in the region. Yet at the same time, it can disavow knowledge of their operations. Such Syrian-supported groups have carried out scores of attacks against Palestinian and other Arab, Turkish, Israeli, and Western targets…"

72.    The Bulletin lists many examples of Syrian sponsorship of terrorism and terrorist organizations.

73.    Syria has an extensive history of funding and supporting HAMAS terrorism with the goal of murdering citizens of the United States and of Israel. A few of those attacks include, but are not limited to:

a.  The June 12, 2014, kidnapping and murder of three boys, two Israelis and one American, Naftali Frankel. The boys were kidnapped by HAMAS operatives at a junction inside the territory under the control of the State of Israel in Alon Shvut, an Israeli community southwest of Jerusalem, on their way home from school. After eighteen (18) days of intense searching, their bodies were discovered on the property of the head of the HAMAS cell that orchestrated the kidnapping and murders.

b.  The October 22, 2014, vehicular attack by Abdel Rahman Shaludi, an agent and operative of HAMAS. Abdel drove a car to a light rail station in Jerusalem where he intentionally drove onto the tracks and rammed his vehicle into the crowd of people attempting to kill as many pedestrians as possible. Among the crowd was an American baby, Chaya Zissel Braun, who was in a stroller when it was struck by the car. Chaya was thrown into the air before landing her head on the pavement; Chaya was pronounced dead two hours later in a nearby hospital.  This Court found Syria liable for the material support and training they provided to the HAMAS terrorist in the matter of *Braun v. Islamic Republic of Iran et al*, 228 F. Supp. 3d 64 (D.D.C. 2017).

74.    HAMAS is an international terrorist organization and has been designated as a Foreign Terrorist Organization by the United States Government. It receives material support from Syria, Iran, and others. During the period relevant hereto, Defendant Syria provided HAMAS and its

14

operatives with training bases and facilities. These training bases and facilities were located within Syria, and in areas of Lebanon including in the Bakaa Valley occupied by and under the complete control of Syria.

75.     HAMAS and its operatives utilized the training bases and facilities provided by Syria to train for the commission of acts of terrorism. This training included the use of firearms, explosives, and other weapons.

76.     HAMAS and its operatives also utilized these bases and facilities, *inter alia,* as depots for storage of weapons and explosives, to establish, maintain and operate a leadership command, organizational hierarchy and/or operational infrastructure, and/or offices/headquarters.

77.     Additionally, at all times relevant hereto, Syria provided HAMAS and its operatives with funding and training in terrorism activities, including training on the use of weapons and explosives.

78.     Upon information and belief, at all times relevant herein, the training in terrorism activities was provided by and through Syrian military and intelligence officials, and other agents, employees and officials of Defendant Syria.

79.     Upon information and belief, at all times relevant hereto, Defendant Syria also provided HAMAS and its leaders, officials, and operatives, with lodging, safe haven, and shelter permitting them to conduct their terrorist activities freely and unhindered.

80.     The duration, quantity, and quality Syria's material support, even if not designated for specific attacks, greatly contributed to HAMAS' ability to carry out terrorist attacks.  HAMAS could not have carried out the lethal attack described in this complaint without Syria's support and sponsorship. Syria and its agents knew and intended that HAMAS would continue to carry out further terrorist attacks, yet continue to support HAMAS.

81.     As a direct and proximate result of the provision of the material support to HAMAS by the Defendant Syria as described herein, hundreds of innocent civilians were killed and grievously injured by acts of terrorism committed by HAMAS.  Among the civilians murdered and wounded by HAMAS' terrorist attacks are  Tiferet Tratner and Rivka Reena Pam whose family members are each Plaintiffs named herein and are entitled to justice and an award of damages, in amounts as shall be proven at the trial of the within action.

## COUNT I
### (Under 28 U.S.C. §1605A(c) on behalf of All Plaintiffs)

82.     Plaintiff repeats, realleges and incorporates by reference those facts and allegations set forth in all the foregoing paragraphs as if fully set forth herein.

83.     As recounted above, the death of Tiferet Tratner was caused by a willful and deliberate act of extra judicial killing. The Defendants, through their agents, financed the attack, planned the attack and/or rendered material support to the activities of HAMAS that resulted in the death of the Tiferet Tratner. Those agents were at all times acting with the scope of their agency and acted on the direction of the Defendants, Iran and Syria.

84.     As recounted above, by use of explosive devices as above described, willfully, violently and forcefully battered and did violence to the body of the Rivka Reena Pam inflicting severe and permanent injuries upon her resulting in great pain and suffering, which injuries required and continue to require extensive medical treatment, have necessitated the expenditure of funds, inter alia, for hospitals, physician's services, nursing care, rehabilitation treatment and lifecare expenses and services, have deprived the Rivka Reen Pam of earning capacity and has permanently disabled her. The willful, wrongful and intentional acts of Hamas were funded, planned and/or directed and/or materially supported by the Defendants, through their agents,

resulting in the injuries to Rivka Reena Pam. Those agents were at all times acting with the scope of their agency and acted on the direction of the Defendants, Iran and Syria.

85.     As a direct and proximate result of the willful, wrongful and intentional acts of the Defendants hereinabove described, for which the Defendants are vicariously, jointly and severally liable, each of the Plaintiffs endured extreme mental anguish, physical injury and pain and suffering, all to their damage and for which the Plaintiffs and each of them seek an award of damages and judgment against the Defendants and each of them jointly and severally to the fullest extent of the law.

WHEREFORE, each Family Member of Tiferet Tratner and each of Family Member Rivka Reena Pam, each demand that judgment be entered, jointly and severally, against the Defendants, Iran and Syria for the damages they suffered, including, but not limited to, pain, suffering, mental anguish, emotional distress, and solatium in the amount of EIGHTEEN MILLION DOLLARS ($18,000,000.00) for each and every one of them, on this Count I, and their costs expended, including attorneys' fees and to the fullest extent of damages permitted by law for the heinous acts of terrorism sponsored by the Defendants.

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS INCLUDING SOLATIUM**
**(Under 28 U.S.C. §1605A(c)**
**on behalf of the Family Members of the Deceased Victim and the Family Members of the**
**Physically Injured Victim)**

86.     Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

87.     The acts of Defendants set forth above constitute extreme and outrageous murderous terrorist conduct with the intent to inflict emotional distress, duress and suffering and solatium upon the Family Members of Tiferet Tratner and the Family Members of Rivka Reena

Pam and each of them.

88.     As a direct consequence of the actions of the Defendants, Iran and Syria and each of them, Plaintiffs have suffered extraordinary grief and mental anguish, and each has thereby suffered damages in the amount of EIGHTEEN MILLION DOLLARS for which they seek judgment to the fullest extent of the law.

WHEREFORE, each Family Member of Tiferet Tratner and each of Family Member Rivka Reena Pam, demand that judgment be entered, jointly and severally, against the Defendants, The Islamic Republic of Iran and The Syrian Arab Republic for the damages they suffered, including but not limited to pain, suffering, mental anguish, emotional distress, solatium in the amount of EIGHTEEN MILLION DOLLARS ($18,000,000.00) for each and every one of them, on this Count II, and their costs expended.

## COUNT III
## PUNITIVE DAMAGES
### (Under 28 U.S.C. § 1605A(c) on behalf of all Plaintiffs)

89.     The Plaintiffs repeat and re-allege each and every allegation set forth above with like effect as if alleged herein.

90.     The actions of the Defendants, carried out by their agents as described above, were malicious, willful, unlawful and in wanton disregard of life and the standards of law that govern the actions of civilized nations. The loss of life and injuries as above described was intended as a result by each Defendant.   The Tiferet Tratner and the Family Members of Tiferet Tratner and and Rivka Reena Pam and the Family Members of Rivka Reena Pam were not engaged in war or in police duties. The actions of those who carried out the attack described were within the scope of their agency on behalf of the Defendants. In accordance with the provisions of 28 U.S.C §1605A(c) each of the Family Members of Tiferet Tratner and each of

Family Members of Rivka Reena Pam are thereby entitled to punitive damages to the fullest extent of the law.

91.     The actions of the HAMAS, as  set forth hereinabove, were intentional and malicious and in willful, wanton and reckless disregard of Tiferet Tratner and the Family Members of Tiferet Tratner and and Rivka Reena Pam and the Family Members of Rivka Reena Pam's rights and physical well being. All of the acts of HAMAS were facilitated through funding, training and material support by The Islamic Republic of Iran and The Syrian Arab Republic. In accordance with 28 U.S.C  § 1605A(c)  the Defendants, the Islamic Republic of Iran and the Syrian Arab Republic and each of them, are therefore vicariously liable for the actions of the HAMAS members. In providing such funding, material support, direction and training, the Islamic Republic of Iran, and the Syrian Arab Republic were acting within the scope of its agencies as an instrumentality. Said agencies rendered material support to those actually carrying out the acts above described. An award of punitive damages is requested as to all Defendants, jointly and severally, in accordance with the provisions of 28 U.S.C. §1605A(c) each of which are vicariously liable for punitive damages.

WHEREFORE, the Plaintiffs pray that judgment be entered, jointly and severally, against the Islamic Republic of Iran and the Syrian Arab Republic on behalf of each and all of the Plaintiffs in the amount of **ONE BILLION US DOLLARS ($1,000,000,000.00)** for each of them, as against each of the Defendants, jointly and severally, and their costs herein expended.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, request joint and several judgment against the Defendants as follows:

19

1.   Awarding Plaintiffs compensatory and solatium damages against Defendants in amounts set forth herein and as shall be determined at trial;

2.   Awarding Plaintiffs punitive or exemplary damages against Defendants, jointly and severally, according to proof to be presented at trial;

3.   Awarding Plaintiffs prejudgment interest and post judgment interest as computed and calculated at the maximum rate allowable by law;

4.   Awarding Plaintiffs their costs and disbursements and reasonable allowances of fees for Plaintiffs counsel and experts and reimbursement of expenses;

5.   Allowing a lis pendens notice of action to issue and be noted and enforced by the Court as against each of the Defendants and their instrumentalities.

6.   Leave to amend this Complaint as interests of justice may allow; and

7.   Granting any and all such further relief as the Court may deem just and proper.


Dated: December 17, 2018

Respectfully submitted,

Heideman Nudelman & Kalik, PC\
1146 19th Street, NW
Fifth Floor
Washington, DC 20036
(202) 463-1818

By: _____*/s/ Richard D. Heideman*_____
        Richard D. Heideman (No. 377462)
        Noel J. Nudelman (No. 449969)
        Tracy Reichman Kalik (No. 462055)

Counsel for Plaintiffs