UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WILLIAM "JACK" BAXTER,** *et al.,*<br><br>    *Plaintiffs,*<br><br>v.<br><br>**SYRIAN ARAB REPUBLIC,** *et al.,*<br><br>    *Defendants.* | **Case No. 1:18-cv-1078-RCL** |
| **BARUCH TRATNER,** *et al.,*<br><br>    *Plaintiffs,*<br><br>v.<br><br>**ISLAMIC REPUBLIC OF IRAN,** *et al.,*<br><br>    *Defendants.* | **Case No. 1:18-cv-2971-RCL** |

**MEMORANDUM OPINION**

In these two cases, plaintiffs have brought suit under the Foreign Sovereign Immunities Act ("FSIA") against the Islamic Republic of Iran ("Iran"), the Syrian Arab Republic ("Syria"), and Syrian Air Force Intelligence ("SAFI") based on terrorist attacks that occurred between December 2001 and September 2004. These cases follow the Court's decision in *Baxter v. Islamic Republic of Iran* (*Baxter I*), No. 1:11-cv-2133 (RCL) (D.D.C. Sept. 27, 2019), ECF No. 41, in which the Court found Iran liable for these attacks. Both sets of plaintiffs have moved for default judgment. *See* Pls.' Mot., *Baxter v. Syrian Arab Republic* (*Baxter II*), No. 1:18-cv-1078 (RCL)

1

(D.D.C. May 31, 2022), ECF No. 45 [hereinafter "*Baxter II* Mot."]; Pls.' Mot., *Tratner v. Islamic Republic of Iran*, No. 1:18-cv-2971 (RCL) (D.D.C. May 31, 2022), ECF No. 23 [hereinafter "*Tratner* Mot."]. After considering the motions, applicable law, and the record as a whole, the Court will **GRANT** plaintiffs' motions and appoint a special master to receive evidence as to plaintiffs' damages.

## I.   BACKGROUND

These plaintiffs are victims and immediate family members of terrorist attacks allegedly perpetrated by the Islamic Resistance Movement ("Hamas"). Because the two cases involve different sets of individuals, the Court will refer to them as the *Baxter II* plaintiffs and the *Tratner* plaintiffs.

In 2011, the plaintiffs in *Baxter I* sued Iran, the Iranian Ministry of Information and Security ("MOIS"), Syria, and SAFI for materially supporting Hamas's operations. Compl. ¶¶ 360–78, *Baxter I*, No. 1:11-cv-2133 (RCL) (Nov. 30, 2011), ECF No. 1 [hereinafter "*Baxter I* Compl."]. Because those plaintiffs were unable to confirm service of process on Syria and SAFI, the Court severed their claims against Syria and SAFI into this lawsuit. Severing Order, *Baxter II*, No. 1:18-cv-1078 (RCL) (D.D.C. May 3, 2018), ECF No. 31. The *Baxter II* plaintiffs served Syria and SAFI under cover of diplomatic note on January 20, 2019. Return of Service, *id.*, ECF No. 39. Defendants did not file an answer and have yet to appear. Accordingly, the Clerk of the Court entered default against Syria and SAFI on November 2, 2020. Entry of Def., *id.*, ECF No. 42. In the interim, the Court entered default judgment in the original action—finding Iran and MOIS liable for damages resulting from Hamas's terrorist attacks. Mem. Op. 1, *Baxter I*, No. 1:11-cv-2133 (RCL) (D.D.C. Sept. 27, 2019), ECF No. 41 [hereinafter "*Baxter I* Mem. Op."]. The *Baxter II* plaintiffs now move for default judgment against Syria and SAFI. *Baxter II* Mot. 1.

In 2018, the *Tratner* plaintiffs sued Iran and Syria based on two of the attacks at issue in *Baxter I*. Compl. ¶¶ 82–91, *Tratner v. Islamic Republic of Iran*, No. 1:18-cv-2971 (RCL), ECF No. 1 [hereinafter "*Tratner* Compl."]. Those attacks are: (1) the June 11, 2003 suicide bombing aboard Bus No. 14A in Jerusalem that killed Rivka Pam; and (2) the September 4, 2004 mortar attacks on Neve Dekalim, a settlement in the Gaza Strip, that killed Tiferet Tratner. *Tratner* Mot. 11–12. The Court, in *Baxter I*, has already found Iran liable for these attacks. *Baxter I* Mem. Op. 7, 14–16. The *Tratner* plaintiffs served Iran and Syria under cover of diplomatic note in June 2019. Return of Service, *Tratner*, No. 1:18-cv-2971 (RCL) (D.D.C. Aug. 29, 2019), ECF No. 16; Notice re Diplomatic Notes, *Tratner*, No. 1:18-cv-2971 (RCL) (D.D.C. July 15, 2022), ECF No. 25. Neither Iran nor Syria answered or entered appearances. The Clerk of the Court entered default against both defendants on September 13, 2019. Entry of Default (Iran), *Tratner*, No. 1:18-cv-2971 (RCL) (D.D.C. Sept. 13, 2019), ECF No. 18; Entry of Default (Syria), *Tratner*, No. 1:18-cv-2971 (RCL) (D.D.C. Sept. 13, 2019), ECF No. 19.

## II.   LEGAL STANDARD

Under the FSIA, a court may not enter default judgment against a foreign state "unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." 28 U.S.C. § 1608(e); *see Jerez v. Republic of Cuba*, 775 F.3d 419, 423 (D.C. Cir. 2014). A district court retains discretion "to determine precisely how much and what kinds of evidence the plaintiff must provide" to establish her right to relief. *Han Kim v. Democratic People's Republic of Korea*, 774 F.3d 1044, 1047 (D.C. Cir. 2014). As part of this inquiry, a plaintiff must prove that the district court has subject matter jurisdiction and personal jurisdiction over the defendant state. *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 21 (D.D.C. 2019) (citing *Thuneibat v.*

*Syrian Arab Republic*, 167 F. Supp. 3d 22, 33 (D.D.C. 2016)). After all, "[a] default judgment rendered in excess of a court's jurisdiction is void." *Jerez*, 775 F.3d at 422.

## III.   FINDINGS OF FACT

Plaintiffs bear the burden to prove their entitlement to a default judgment "by evidence satisfactory to the court." 28 U.S.C. § 1608(e). Multiple types of evidentiary sources can discharge this obligation. For example, a court may rely on "uncontroverted factual allegations" supported by "documentary and affidavit evidence." *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 59 (D.D.C. 2010) (quoting *Int'l Rd. Fed'n v. Embassy of the Democratic Republic of the Congo*, 131 F. Supp. 2d 248, 252 n.4 (D.D.C. 2001)). A court may also "take judicial notice of, and give effect to, its own records" in interrelated proceedings. *Fain v. Islamic Republic of Iran*, 856 F. Supp. 2d 109, 115 (D.D.C. 2012) (quoting *Booth v. Fletcher*, 101 F.2d 676, 679 n.2 (D.C. Cir. 1938)). Because of repeat issues and repeat players in FSIA-related litigation, courts in this District often take judicial notice of earlier, related proceedings. *See, e.g.*, *Lee v. Islamic Republic of Iran*, 518 F. Supp. 3d 475, 480 (D.D.C. 2021); *Fain*, 856 F. Supp. 2d at 115; *Valore*, 700 F. Supp. 2d at 59–60. But a court must "reach [its] own, independent findings of fact" even when relying upon evidence presented in related proceedings. *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 172 (D.D.C. 2010).

### A.  Hamas's Terrorist Attacks

First, plaintiffs have alleged that Hamas agents committed the terrorist attacks that caused their injuries. *See Baxter I* Compl. ¶ 354; *Tratner* Compl. ¶¶ 52, 81. The Court will take judicial notice of the factual record and findings of fact in the *Baxter I* litigation. *See Baxter I* Mem. Op. The Court will also take judicial notice of *Linde v. Arab Bank, PLC*, No. 04-cv-2799 (BMC) (E.D.N.Y. Sept. 22, 2014), a proceeding in which a jury determined that Hamas was responsible

for these attacks.  In *Baxter I*, the Court further qualified two subject matter experts—Dr. Matthew

Levitt and Dr. Ronni Shaked—who testified at the *Linde* trial.  *Baxter I* Mem. Op. 4.  The Court

will, as before, qualify these experts based on their impressive credentials and knowledge of the

subject matter.  *See Baxter I* Mem. Op. 4 n.2.

There are ten terrorist attacks at issue.  Details of these attacks are as follows:

- April 30, 2003: Two terrorists—Asif Muhammad Hanif and Omar Khan Sharif—attempted to detonate bombs at a pub in Tel Aviv, Israel. *Id.* at 5.  Hanif detonated his bomb. *Id.*  Sharif's bomb never exploded. *Id.*  Three people were killed and more than fifty people were injured. *Id.*

- September 9, 2003: Ramez Abu Salim detonated a suicide bomb in Café Hillel, a café in Jerusalem, Israel. *Id.* at 6.  Seven people were killed in the attack. *Id.*

- June 11, 2003: Abd el-Mu'at Shabana, dressed as an Orthodox Jew, detonated a suicide bomb on Bus No. 14A in Jerusalem, Israel. *Id.* at 7.  Seventeen people were killed and more than 100 people were wounded, including Rivka Pam. *See id.*; *Tratner* Compl. ¶¶ 17, 20.

- December 1, 2001: Two suicide bombers—Osama Mahmud Eid Behar and Nabil Mahmud Jamil Halabiya—detonated their explosives on Ben Yehuda Street in Jerusalem, Israel.  *Baxter I* Mem. Op. 7.  The explosions killed eleven people and injured more than 188 people. *Id.*

- March 7, 2003: Two terrorists—Muhsin Muhammad Omar al-Qawasmeh and Hazen Fawzi Abd al-Sam'i al-Qawasmeh—breached a security fence outside the Israeli town of Kiryat Arba. *Id.* at 8.  The terrorists, armed with rifles and grenades, killed Debra and Eli Horovitz. *Id.*

- March 5, 2003: Mahmoud Qawasmeh detonated a suicide bomb on Bus No. 37 in Haifa, Israel, killing seventeen people. *Id.* at 9.

- March 27, 2002: Abd al-Baset Odeh detonated a suicide bomb at the Park Hotel in Netanya, Israel during a Passover Seder. *Id.* at 10.  This explosion killed thirty people. *Id.*

- August 19, 2003: Ra'ed Abd el-Hamid Misk detonated a suicide bomb on Bus No. 2 in Jerusalem, Israel. *Id.*  The explosion killed twenty-three people and injured 130 people. *Id.*

- <u>January 29, 2004</u>: Ali Muneer Ja'ara detonated a suicide bomb on Bus No. 19 in Jerusalem, Israel. *Id.* at 11. The blast killed eleven people and wounded more than fifty others. *Id.*

- <u>September 24, 2004</u>: Terrorists fired three mortar shells into Neve Dekalim, an Israeli settlement in the Gaza Strip. *Id.* at 15. Although the precise number of casualties is unknown, one of the mortar explosions killed Tiferet Tratner. *Id.*

In *Baxter I*, the Court found Hamas responsible for each attack. *See id.* at 5–16. Ample evidence supported these findings. Hamas assumed responsibility for many of these attacks by publicly taking credit for the bombings, publishing posters, tapes, and photographs of the perpetrators, or disseminating the perpetrators' wills. *See id.* at 5–11. The Government of Israel expressly tied Hamas to the attacks in official documents. *See id.* And Dr. Shaked presented detailed testimony at an evidentiary hearing, including an explanation about "how terrorist organizations mold a potential suicide bomber to not only kill others, but also himself." *Id.* at 13. For the attack on Neve Dekalim, plaintiffs presented Hamas's "Book of Martyrs," which acknowledged a Hamas agent's responsibility for the mortar attack. *Id.* at 15.

After reviewing these materials, the Court is satisfied that plaintiffs have met § 1605(e)'s evidentiary burden and finds Hamas responsible for these ten attacks.

### B. Defendants' Involvement in the Attacks

The defendants in these actions are Iran, Syria, and SAFI. Many courts within this District have found these entities responsible for providing material support to Hamas. *See, e.g.*, *Est. of Hirshfeld v. Islamic Republic of Iran*, 330 F. Supp. 3d 107, 120 (D.D.C. 2018) (finding that Iran's material support included "funding, weaponry, training, in-kind services, and ideological support"); *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 76 (D.D.C. 2017) ("The plaintiffs have established that the [a]ttack was perpetrated by Hamas, which has received long-standing material support and resources from [Iran and Syria]."). The Court will review that evidence here.

### i. Iran's Support for Hamas

Iran has been designated a state sponsor of terrorism since 1984. U.S. Dep't of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited July 11, 2022). The State Department and this Court have consistently recognized Iran's historical support for Hamas's terrorist activities. *See Est. of Steinberg v. Islamic Republic of Iran*, No. 1:17-cv-1910, 2019 WL 6117722, at *2 (RCL) (D.D.C. Nov. 15, 2019); *Roth v. Islamic Republic of Iran (Roth I)*, 78 F. Supp. 3d 379, 388–89 (D.D.C. 2015). One expert testified that, in the fall of 2000, "Iranian support for Hamas was at fever pitch" and involved payments of "at least several million dollars a year, if not more." Patrick Clawson Dep. 27:14–18; 33:2–4, *Greenbaum v. Islamic Republic of Iran*, No. 1:02-cv-2148 (RCL), ECF No. 28-2.

Evidence also reveals that Iran routed its support for Hamas through MOIS. *Roth I*, 78 F. Supp. 3d at 388–89. In the early 2000s, MOIS had "approximately 30,000 employees" and spent between $50 million and $100 million "sponsoring terrorist activities of various organizations such as Hamas." *Campuzano v. Islamic Republic of Iran*, 281 F. Supp. 2d 258, 262 (D.D.C. 2003). MOIS transferred funds directly to Hamas and provided training to Hamas operatives. *See Roth I*, 78 F. Supp. 3d at 389; *Campuzano*, 281 F. Supp. 2d at 262. Over the years, evidence has shown that "MOIS support for terrorism and Hamas's engagement in it was approved at the highest level of Iran's government." *Roth I*, 78 F. Supp. 3d at 389; *see Peterson v. Islamic Republic of Iran*, 264 F. Supp. 2d 46, 53 (D.D.C. 2003) (detailing evidence suggesting that, in 1983, Iranian approval of terrorist attacks would require the approval of Iran's supreme religious leader, the ayatollah); *Campuzano*, 281 F. Supp. 2d at 262 (finding that Iran's support for Hamas's terrorist attacks "could not have occurred without . . . senior leadership approval").

### ii. Syria's Support for Hamas

Syria has been designated as a state sponsor of terrorism by the State Department since 1979. *Roth v. Syrian Arab Republic* (*Roth II*), No. 1:14-cv-1946 (RCL), 2018 WL 4680270, at *3 (D.D.C. Sept. 28, 2018); *see also* U.S. Dep't of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited July 11, 2022). In the 1980s, Syria and Hamas reached an agreement in which "Hamas undertook to carry out acts of extrajudicial killing and terrorism against Jews in Israel, the West Bank, and Gaza, and in return Syria undertook to provide Hamas with material support and resources to carry out such extrajudicial killings and terrorist attacks." *Braun v. Islamic Republic of Iran*, 228 F. Supp. 3d 64, 71 (D.D.C. 2017). Syria provided Hamas "a base from which to operate" in the mid-1990s, and "[i]nstructions for terrorist attacks were transmitted directly from Damascus to the terrorist cell that was to carry out the attack." *Roth*, 2018 WL 4680270, at *3 (alteration in original) (citations omitted). Hamas agents were "able to organize political events from Damascus" and could "learn terrorist strategies" through access to "[Syria's] military strategists and to Hezbollah's resources in Lebanon." *Id.* (citations omitted).

Other evidence indicates that SAFI "specifically acted as a conduit for Syria's 'provision of funds to terrorist organizations,' including Hamas and [the] Palestinian Islamic Jihad." *Roth*, 2018 WL 4680270, at *3 (quoting *Wultz v. Islamic Republic of Iran*, 864 F. Supp. 2d 24, 32 (D.D.C. 2012)). Syria and Hamas eventually terminated their relationship "because of Hamas'[s] support for rebel forces in the Syrian civil war." *Roth*, 2018 WL 4680270, at *4 n.3. Nonetheless, at the time of these attacks, Syria lent Hamas considerable support through funding, weapons, safe havens, and strategic training. *Id.* at *4.

## IV.   CONCLUSIONS OF LAW

### A. Subject Matter Jurisdiction

The FSIA is the "sole basis for obtaining jurisdiction over a foreign state in our courts."

*Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989).   Federal district

courts may exercise subject matter jurisdiction over (1) nonjury civil actions (2) for claims seeking

relief *in personam* (3) against a foreign state (4) when the FSIA does not entitle the foreign state

to sovereign immunity.   *See* 28 U.S.C. § 1330(a).

All four elements are met here.   Plaintiffs do not demand a jury trial, making this case a

nonjury civil action.   They assert a right to *in personam* relief against the defendants.   Though this

lawsuit implicates Iran, Syria, and SAFI, the Court nevertheless concludes that plaintiffs have sued

a "foreign state."   The FSIA defines a "foreign state" as "a political subdivision of a foreign state."

28 U.S.C. § 1603(a).   A court must use a "categorical approach" to determine the legal status of

government entities in this analysis.   "[I]f the core functions of the entity are governmental, it is

considered the foreign state itself; if commercial, the entity is an agency or instrumentality of the

foreign state."   *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 234 (D.C. Cir. 2003).   The Court

has previously held that MOIS and SAFI "acted as conduits" for Iran and Syria's "provision of

funds to terrorist organizations."   *Wultz*, 864 F. Supp. 2d at 32.   "Intelligence . . . operations are

not commercial in nature; they are governmental functions."   *Roth I*, 78 F. Supp. 3d at 393.   By

performing these governmental functions, MOIS and SAFI acted as "foreign states" within the

meaning of the FSIA.

The last element—sovereign immunity—needs elaboration.   A foreign state has no

immunity:

> in any case . . . [1] in which money damages are sought [2] against
> a foreign state [3] for personal injury or death that was [4] caused

9

> by [5] an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

28 U.S.C. § 1605A(a)(1). Many of these requirements are plainly met.

First, all plaintiffs in these cases seek money damages. *See Baxter I* Compl. ¶¶ 360–78; *Tratner* Compl. ¶¶ 82–91.

Second, these plaintiffs have sued Iran, Syria, and SAFI, which are "foreign states" within the meaning of the FSIA.

Third, plaintiffs' claims arise from personal injuries or deaths. Under § 1605A, a claimant need not directly suffer the injury or death caused by the foreign state. *Valore*, 700 F. Supp. 2d at 66. The injury or death "must merely be the [basis] of a claim for which money damages are sought." *Id.* Plaintiffs' claims stem from injuries and deaths suffered in the Hamas attacks or from emotional injuries resulting from those attacks. These injuries satisfy this jurisdictional requirement. *See Est. of Steinberg*, 2019 WL 6117722, at *4.

Fourth, plaintiffs have proven causation. Plaintiffs must show that the defendants proximately caused their injuries. *Valore*, 700 F. Supp. 2d at 66. Proximate cause exists if there is "some reasonable connection between the act or omission of the defendant and the damages which the plaintiff has suffered." *Id.* (quoting *Brewer v. Islamic Republic of Iran*, 664 F. Supp. 2d 43, 54 (D.D.C. 2009)). The defendants' actions or omissions (1) "must be a 'substantial factor' in the sequence of events that led to the plaintiff's injury" and (2) "must have been 'reasonably foreseeable or anticipated as a natural consequence' of the defendant's conduct." *Owens v. Republic of Sudan*, 864 F.3d 751, 794 (D.C. Cir. 2017) (quoting *Rothstein v. UBS*, 708 F.3d 82, 91 (2d Cir. 2013)), *vacated and remanded on other grounds sub nom. Opati v. Republic of Sudan*,

140 S. Ct. 1601 (2020). The Court has found that Hamas operatives conducted the attacks at issue in these cases, that the defendants funded and trained Hamas operatives, and that the defendants encouraged Hamas to commit terrorist attacks against Israeli targets. *See supra* Part III.B. By giving Hamas the means, funds, and training needed to conduct these terrorist attacks, Iran and Syria's conduct was a substantial factor in the events leading to plaintiffs' injuries. The result—the injuries and deaths of innocent Israeli civilians—was not only foreseeable; it was intended. Plaintiffs' evidence satisfies the FSIA's causation requirement.

Finally, the FSIA requires that plaintiffs' claims arise out of "an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). An "extrajudicial killing" is "a deliberated killing not authorized by a previous judgment" of a "regularly constituted court." Torture Victim Protection Act ("TVPA"), Pub. L. No. 102-256, 106 Stat. 73, § 3(a) (1992); *see* 28 U.S.C. § 1605A(h)(7) (adopting the TVPA's definition of "extrajudicial killing"). All ten of these attacks resulted in the deaths of innocent civilians. They were deliberated and not authorized by any judgment of a foreign court, so they qualify under the FSIA as acts of extrajudicial killings.

"[M]aterial support or resources" refers to "any property, tangible or intangible, or service," and includes, among other forms of support, "currency or monetary instruments," "lodging, training, expert advice or assistance, safehouses, false documentation or identification," "weapons, lethal substances, explosives, personnel," and "transportation." 18 U.S.C. § 2339A(b)(1); *see* 28 U.S.C. § 1605A(h)(3) (adopting definition of "material support or resources" found in 18 U.S.C. § 2339A). This support must be provided "by an official, employee, or agent of [the] foreign state" acting in the scope of his "office, employment, or agency." 28 U.S.C. § 1605A(a)(1). As explained above, defendants funneled money and training

11

services to support Hamas's terrorist activities. Iran and Syria did so through MOIS and SAFI. *See supra* Part III.B. In doing so, these defendants provided material support through state officials acting in the scope of their employment. *See Baxter I* Mem. Op. 22.

With the last element to waive the defendants' sovereign immunity satisfied, the Court concludes that the defendants—Iran, Syria, and SAFI—are not entitled to sovereign immunity. The Court, by means of § 1330(a), possesses subject-matter jurisdiction over this action.

### B. Requirements for a Claim to be Heard

The FSIA's terrorism exception applies only if: (i) the foreign state was designated a state sponsor of terrorism at the time of the attack (or as a result of the attack); (ii) the "claimant or victim" is a "national of the United States," a "member of the armed forces," or an employee or contractor of the United States government; and (iii) the foreign state was afforded "a reasonable opportunity to arbitrate" the claim, if "the act occurred in the foreign state against which the claim has been brought." *Id.* § 1605A(a)(2)(A)(i)–(iii). All three elements are satisfied here. First, Iran and Syria were both designated as state sponsors of terrorism at the time of Hamas's attacks. *See* U.S. Dep't of State, *State Sponsors of Terrorism*, https://www.state.gov/state-sponsors-of-terrorism/ (last visited July 11, 2022). Second, plaintiffs have alleged that all claimants or victims are or were United States citizens at the time of the attacks.[1] The third requirement—an opportunity to arbitrate—is inapplicable because the acts in these cases occurred in Israel, not in Iran or Syria. The Court may properly exercise subject-matter jurisdiction over the defendant states.

---

[1] Plaintiffs in *Baxter I* are in the process of submitting evidence of citizenship and damages to a special master. Plaintiffs in *Tratner* have submitted affidavits demonstrating their U.S. citizenship. To the extent the *Baxter II* plaintiffs cannot produce proof of citizenship to the special master, the Court shall dismiss their claims.

### C.  Personal Jurisdiction

Next is personal jurisdiction.  Federal courts have personal jurisdiction over a foreign state if (1) the court has subject matter jurisdiction under 28 U.S.C. § 1330(a); and (2) plaintiffs properly effectuate service under the FSIA.  *See* 28 U.S.C. § 1330(b).  The FSIA permits four valid methods of service.  First, the plaintiff must follow "any special arrangement[s]" for service existing with the foreign state.  28 U.S.C. § 1608(a)(1).  Second, the plaintiff may serve a defendant state "in accordance with an applicable international convention."  *Id.* § 1608(a)(2).  Third, the plaintiff may mail copies of the complaint, summons, and notice of suit on a defendant state's head of ministry of foreign affairs.  *Id.* § 1608(a)(3).  Finally, if those three methods are unavailable, the plaintiff may serve a defendant state through diplomatic channels.  *Id.* § 1608(a)(4).  Because § 1608(a)'s first two methods did not apply to Iran and Syria, these plaintiffs attempted service by mail and service by diplomatic channel.

The Court originally severed *Baxter II* because of plaintiffs' difficulties in serving Syria with process.  *See* Severing Order, *Baxter II*, No. 1:18-cv-1078 (RCL) (D.D.C. May 4, 2018), ECF No. 31.  On September 23, 2014, the *Baxter II* plaintiffs unsuccessfully attempted service by mail.  Certificate of Mailing, *id.*, ECF No. 22.  Five years later, they achieved service on Syria and SAFI under cover of diplomatic note.  Return of Service, *id.*, ECF No. 39.

The *Tratner* plaintiffs attempted service by mail on February 28, 2019.  Certificate of Mailing, *Tratner*, No. 1:18-cv-2971 (RCL) (D.D.C. Feb. 28, 2019), ECF No. 11.  When that proved unsuccessful, they sought service through diplomatic channels.  The *Tratner* plaintiffs achieved service under cover of diplomatic note in July and August 2019.  *See* Return of Service, *id.*, ECF No. 16; Notice re Diplomatic Notes, *id.*, ECF No. 25.[2]

---

[2] The *Tratner* plaintiffs originally docketed an incomplete version of the diplomatic notes reflecting service on Iran. *See* Return of Service, *Tratner*, No. 1:19-cv-2971 (RCL) (D.D.C. July 23, 2019), ECF No. 15. This filing, however,

Plaintiffs have therefore complied with § 1608(a)(4), meaning that this Court may exercise personal jurisdiction over the defendants.

### D.  Timeliness

Lawsuits based on the FSIA's terrorism exception "may be brought or maintained" only if filed within the later of (1) "10 years after April 24, 1996 or (2) "10 years after the date on which the cause of action arose."   28 U.S.C. § 1605A(b).   None of the defendants, however, have appeared in these cases to this date.  A federal court has no authority to raise a statute-of-limitations defense when a defendant "fail[s] to enter an appearance or submit a filing at any stage of [a] case[]."  *Maalouf v. Islamic Republic of Iran*, 923 F.3d 1095, 1108, 1113 (D.C. Cir. 2019).  The Court will not enforce this limitations defense *sua sponte*.

### E.  Venue

For civil actions "against a foreign state or political subdivision thereof," venue is proper "in the United States District Court for the District of Columbia."  28 U.S.C. § 1391(f)(4).  Iran, MOIS, Syria, and SAFI are "foreign state[s]" under the FSIA.  *See* 28 U.S.C. § 1603(a).  Venue is therefore proper in this District.

### F.  Liability Under § 1605A(c)

Section 1605A(c) provides a federal cause of action for victims of state-sponsored terrorism.  "There is almost total 'overlap between the elements of [§ 1605A(c)'s] cause of action and the terrorism exception to foreign sovereign immunity.'"  *Fritz v. Islamic Republic of Iran*, 320 F. Supp. 3d 48, 86–87 (D.D.C. 2018) (alterations in original) (quoting *Foley v. Syrian Arab Republic*, 249 F. Supp. 3d 186, 205 (D.D.C. 2017)).  A foreign state may be liable for injuries to

---

still indicated that service on Iran occurred on June 2, 2019. *Id.* The *Tratner* plaintiffs remedied this deficiency on July 15, 2022, by providing the full set of diplomatic notes.  Notice re Diplomatic Notes, *id.*, ECF No. 25.

14

(1) U.S. nationals, (2) members of the U.S. armed forces, or (3) U.S. employees or contractors acting within the scope of their employment. *See* 28 U.S.C. § 1605A(c).

Because all plaintiffs are U.S. nationals, they fall within the scope of § 1605A(c)'s private cause of action.[3] They have also articulated theories of recovery. As the Court has already held, the *Baxter I* plaintiffs demonstrated their right to relief for economic damages, survival damages for pain and suffering, solatium damages for intentional infliction of emotional distress, assault and battery damages on behalf of the victims, and punitive damages. *Baxter I* Mem. Op. 28. Since *Baxter II* implicates the same plaintiffs, that holding applies equally to them. The *Tratner* plaintiffs have also asserted claims along these lines. *See Tratner* Compl. ¶¶ 82–91. The Court concludes that these claims state valid theories of recovery against the defendants. *Baxter I* Mem. Op. 29–32.

## V.      CONCLUSION

For the reasons above, the Court will **GRANT** the *Baxter II* and *Tratner* plaintiffs' motions for default judgment as to liability. Separate orders consistent with this memorandum opinion shall issue this date. Plaintiffs have recommended that the Court refer these claims to Alan L. Balaran, special master in *Baxter I*, to take evidence and submit recommendations with respect to plaintiffs' individual measures of damages. *Baxter II* Mot. 34; *Tratner* Mot. 24–25. The Court agrees and will refer these claims to Mr. Balaran in separate orders.

Date: July 19, 2022

Royce C. Lamberth
United States District Judge

---

[3] Those plaintiffs that have not proven their citizenship shall be required to submit proof to the special master. If they fail to do so, their claims shall be dismissed.